THE STATE OF WASHINGTON, *Respondent*, v. ELDON
LEE WHITNEY, *Appellant.*

*Richard H. Adler* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Linda G. Walton, Deputy,* for respondent.

ROSELLINI, J.—A police detective, aided by an informant, persuaded one Scalese to put him in touch with a seller of marijuana. The appellant was contacted and delivered five "pound" bags of the substance to the detective, in the presence of Scalese, at which time both he and Scalese were arrested. The two, charged with possession with intent to manufacture or deliver, were granted separate trials. The jury in the Scalese trial, which was held first, found the defendant not guilty. Scalese had defended on the grounds of alleged entrapment and lack of proof of possession. The attorney for Scalese, Richard Hanson, signed an affidavit in which he declared that jurors in the case had told him that they found Scalese had been entrapped by police officers. The Hanson affidavit detailed the evidence upon which the jury might have found that Scalese had been entrapped.

This affidavit was presented to the Superior Court along with pretrial motions to suppress the use of the marijuana as evidence against the appellant, or in the alternative, to dismiss the prosecution under CrR 8.3(b). These motions were denied.

CrR 8.3(b) provides:

> **(b) On Motion of Court.** The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order.

The discretion conferred upon the superior court

under this rule must be exercised in conformity with the requirement that the record show governmental misconduct or arbitrary action of the type which this court has historically found sufficient to support a dismissal of a criminal charge. *State v. Burri,* 87 Wn.2d 175, 550 P.2d 507 (1976); *State v. Starrish,* 86 Wn.2d 200, 544 P.2d 1 (1975). The purpose of the rule is to see that one charged with crime is fairly treated. *State v. Satterlee,* 58 Wn.2d 92, 361 P.2d 168 (1961).

In *State v. Baker,* 78 Wn.2d 327, 474 P.2d 254 (1970), this court said:

> Dismissal of charges is an extraordinary remedy. It is available only when there has been prejudice to the rights of the accused which materially affected the rights of the accused to a fair trial and that prejudice cannot be remedied by granting a new trial.

*Baker,* at 332–33.

Aside from the inadequacy of the attorney's affidavit to establish that Scalese was entrapped by police officers,[1]

---

[1] Jurors may not impeach their own verdict by affidavit, or otherwise. In *Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 179–80, 422 P.2d 515 (1967), we said:

> Thus, courts may consider only such facts asserted in the affidavits of jurors which relate to the claimed misconduct of the jury and do not inhere in the verdict itself. The mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's processes in arriving at its verdict, and, therefore, inhere in the verdict itself, and averments concerning them are inadmissible to impeach the verdict.

(Citations omitted.)

The effect of the affidavit of Hanson was to propose an amendment to the verdict, so that it reflected a finding upon the issue of entrapment, whereas the verdict rendered may have been based on a simple finding that the State did not prove its case to the satisfaction of the jury. If a verdict is to be amended, it must be done in the presence of the jury when it is before the court and under its control. J. Proffatt, *Jury Trial* § 461 (1880). 89 C.J.S. *Trial* § 513 (1955). In short, the verdict cannot be amended after the jury has been exposed to outside influence, nor can an amendment be effected by less than the whole body of the jury. The proposed amendment would have been improper in any event, since the jury had not been asked to make a special finding on the issue of entrapment.

the appellant offers no authority that entrapment of an accomplice is a proper ground for dismissal of a prosecution. Such entrapment may have been a defense to the prosecution of Scalese, but it is no defense to the action against the appellant, much less a ground for dismissal. He does not suggest that he himself was entrapped. Inasmuch as there was no showing that the appellant had been unfairly treated or that the alleged governmental misconduct toward Scalese affected in any way the appellant's right to a fair trial, the court did not err in refusing to dismiss.

The appellant suggests that the prosecution should have been denied the right to introduce the captured marijuana in evidence because of the alleged entrapment of Scalese. He relies upon the fact that entrapment is contrary to public policy, as evidenced by the fact that it may be shown as a defense to a prosecution. RCW 9A.16.070. Because entrapment involves objectionable police conduct, the appellant maintains that the exclusionary rule, applied where evidence has been obtained in violation of the defendant's Fourth Amendment rights, should be adopted in entrapment cases, and further should be applied in a prosecution where evidence obtained through entrapment of one person is offered against another.

As we have already observed (see footnote 1), the alleged entrapment of Scalese was never established in this trial, or in the trial of Scalese himself. But assuming the fact were judicially established, we see no sound reason to adopt the exclusionary rule contended for by the appellant. That rule has been found necessary to secure to citizens the protection of their constitutional rights under the Fourth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961). While entrapment is improper conduct on the part of police officers, it does not

---

Moreover, an attorney's affidavit, reporting statements made to him by jurors, is hearsay and cannot be used to accomplish that which cannot be done by affidavits of the jurors themselves. *Cox v. Charles Wright Academy, Inc., supra.*

invade any independent constitutional right of the defendant. It is not a case of the government violating its own laws. *United States v. Russell,* 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973).

Next, the appellant argues that his indictment should have been dismissed because the police in making contact with Scalese allegedly used an informant who was regularly paid on a contingent fee basis. There is nothing in the record of this case to show that such was the fact. Nor does the record show that the evidence presented against the defendant was gathered by an informant.

In *Williamson v. United States,* 311 F.2d 441 (5th Cir. 1962), it was held that without some justification or explanation, the courts cannot sanction a contingent fee agreement which requires the informer to pursue a named individual and involve him in the commission of a crime. However, the Ninth Circuit refused to follow *Williamson* in a case where the government had paid bounties for the arrest of a designated individual. The Ninth Circuit court said, however, that if the reward was offered for obtaining a conviction there would be a legitimate objection, since it would tend to encourage perjury. *United States v. Ladley,* 517 F.2d 1190 (9th Cir. 1975); *accord, United States v. Cuomo,* 479 F.2d 688 (2d Cir. 1973). It is not contended that the informant here was paid a specific sum of money to procure the arrest of a specific individual, or that he was paid to obtain the conviction of a person informed against.

Since neither of these evils was present here, and, moreover, no evidence procured by an informer was used against the appellant, we need not decide here to what extent improper payments to such an agent should affect the trial of an accused.

Finally, appellant argues that after enactment of the Controlled Substances Therapeutic Research Act of 1979, marijuana's classification as a schedule I drug no longer bears a rational relationship to a legitimate state purpose. Appellant's constitutional challenge is based on the fact that, under the statutory definition, marijuana belongs in

schedule I only if it has no accepted medical use in treatment in the United States. RCW 69.50.203. Appellant points out that the Controlled Substances Therapeutic Research Act recognizes that there may be medical uses of marijuana for cancer and glaucoma sufferers and perhaps others. RCW 69.51.040(2).

The 1979 act sets up a program to research the effects of marijuana on cancer and glaucoma patients, and authorizes the use by such patients of the drug under controlled circumstances. This provision does not manifest a legislative finding that there is an accepted medical use for the drug, but rather a finding that there may be such a use. *State v. Palmer,* 96 Wn.2d 573, 637 P.2d 239 (1981). The act removes marijuana from schedule I and places it in schedule II only for purposes of the research program. RCW 69.51.080. This, of course, does not mean that the legislature has found that the drug does not have a high potential for abuse or that it has an accepted medical use and is safe for use in treatment under medical supervision. *See* RCW 69.50.203. The retention of the drug in schedule I for purposes other than the research program cannot reasonably be said to bear no rational relation to a legitimate legislative purpose. In any event, as in *State v. Palmer, supra,* the defendant makes no pretense that he himself is a sufferer from one of these diseases. Consequently, even though the drug was reclassified in schedule II (where the legislature has determined it belongs if there is an established medical use), the appellant is not affected. The penalties for unauthorized possession are the same under both schedules.

The appellant also contends that RCW 69.51 repeals marijuana's schedule I classification by implication. Repeal by implication is not favored.

A later act will not operate to repeal an earlier act unless the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is patently intended to supersede prior legislation on the subject, or unless the two acts are so clearly inconsistent that they

cannot be reconciled and both given effect by any fair and reasonable construction.

*State v. Adams,* 76 Wn.2d 650, 675–76, 458 P.2d 558 (1969). The 1979 act provides that marijuana will be considered a schedule II substance for purposes of that chapter *only,* and that for patients covered by the act, the schedule I classification will not apply. RCW 69.51.080. It thus carves out an exception to RCW 69.50.204, listing marijuana as a schedule I drug. That being the case, there is a repeal, in effect an express repeal, but a temporary one and only pro tanto. The appellant's unauthorized dealing remains subject to the earlier act.

The judgment is affirmed.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.

Reconsideration denied January 14, 1982.

[No. 47445–1. En Banc. December 17, 1981.]