[No. 20933-1-II.   Division Two.   December 4, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. JESS GARNER WILLIAMS, *Appellant*.

*Stacey L. Bennetts*; and *Jeffrey Steinborn* of *Steinborn & Associates*, for appellant.

*John W. Ladenburg, Prosecuting Attorney*, and *Barbara L. Corey-Boulet, Deputy*, for respondent.

BRIDGEWATER, A.C.J. — Jess Garner Williams appeals his convictions for unlawful manufacturing of marijuana and unlawful possession of marijuana. We hold that Williams's contention that the classification of marijuana is unconsti-

tutional is meritless. Furthermore, the defense of medical necessity is unavailable for drugs that are classified as Schedule I controlled substances because the Legislature has conclusively determined that marijuana has no currently accepted medical use in treatment in the United States. Because the defense is unavailable, it was not error to exclude testimony of an expert regarding the medical use of marijuana, and it was not error to fail to instruct as to medical necessity. But even if medical necessity were a proper defense in some cases, we hold that it was not improper for the judge to refuse to submit it to the jury in this case because there is not substantial evidence to support it in the record. We affirm.

Williams was charged with unlawful manufacturing of marijuana, unlawful possession of marijuana with intent to deliver, and simple possession of marijuana. He claimed he was growing the marijuana for his own use as a medicine for the anxiety and emotional lability caused by a head injury he sustained in 1988.

Prior to trial, Williams moved to dismiss the charges, arguing that marijuana was unconstitutionally classified as a Schedule I substance. This motion was denied.

At trial, Williams attempted to argue that he should be acquitted on both charges because use of marijuana was a medical necessity. In support of this affirmative defense, he offered the testimony of Dr. Lawrence Halpern, a neuropharmacologist, on the medical uses of marijuana and the effect of the drugs prescribed for him. The court instructed the jury to disregard Dr. Halpern's testimony. However, there was testimony from physicians regarding marijuana and the defense of medical necessity. The court also denied Williams's motion to submit an instruction on medical necessity to the jury.

## I. Classification

██ Williams assigns error to the trial court's denial of his motion to dismiss on the grounds that marijuana is

unconstitutionally classified as a Schedule I drug in violation of article I, sections 12 and 32 of the Washington Constitution. Williams makes no new argument for the unconstitutionality of the classification, but rather adopts those made by the defendant in a recent state Supreme Court case, *Seeley v. State*, 132 Wn.2d 776, 940 P.2d 604 (1997), in which the court held that the classification does not violate article I, sections 12 and 32. Williams invites this court, without giving any reason, to overrule this binding authority. We decline. The trial court was correct.

## II. Medical Necessity

We note that the Supreme Court has never decided the issue of medical necessity for marijuana use. Our discussion concerning testimony and jury instructions about the defense of medical necessity begins with the classification of marijuana as a controlled substance. Since 1981, our Supreme Court has dealt with this classification issue. In *State v. Palmer*, 96 Wn.2d 573, 637 P.2d 239 (1981), the court held that the state Board of Pharmacy did not abuse its discretion when it declined to remove marijuana from Schedule I. The trial court had permitted testimony about the general, accepted medical use for marijuana and the prosecutor had waived any objection to Palmer's standing to raise and argue the issue.

The Supreme Court rejected the same argument concerning classification after the enactment of the Controlled Substances Therapeutic Research Act of 1979 in *State v. Whitney*, 96 Wn.2d 578, 637 P.2d 956 (1981). *Whitney* was decided based upon an equal protection challenge, which the Supreme Court had previously rejected in *State v. Smith*, 93 Wn.2d 329, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980). *Whitney* held that the Controlled Substances Therapeutic Research Act did not manifest a finding that marijuana has an accepted medical use or that it is safe for use under medical supervision and held that the retention of the drug in Schedule I was reasonably related to a legitimate state purpose. *Whitney*, 96 Wn.2d at 583.

Classification is important because the Uniform Controlled Substances Act classifies controlled substances based upon their **therapeutic** value, potential for abuse, and safety. A substance is listed in Schedule I if there is (1) a high potential for abuse, (2) no currently accepted medical use in treatment in the United States, and (3) no accepted safety for use in treatment under medical supervision. RCW 69.50.203. A substance that has been classified as Schedule II has a "currently accepted medical use in treatment." RCW 69.50.205(a)(2).

In *Seeley*, the Supreme Court exhaustively dealt with the classification issue both under the privileges and immunities clause of the Washington Constitution; the Fourteenth Amendment of the United States Constitution; the equal protection clause; and article I, section 12 of the Washington Constitution. We point to some of the principles and facts set out in *Seeley* that we find helpful to our consideration of medical necessity:

(1) Both federal and state statutes list marijuana in Schedule I. "Thus, it is illegal for use under all circumstances except under narrow exceptions for research." *Seeley*, 132 Wn.2d at 782-83.

(2) When the Legislature adopted the Uniform Controlled Substances Act in 1971, it placed marijuana in Schedule I. *Seeley*, 132 Wn.2d at 784. In 1986, the Legislature placed Marinol, the FDA approved form of synthetic THC, in Schedule II, but left marijuana in Schedule I. *Seeley*, 132 Wn.2d at 784.

(3) Washington's Constitution, article XX, section 2, specifically grants the Legislature the authority to regulate the practice of medicine and the sale of drugs and medicine. *Seeley*, 132 Wn.2d at 789.

(4) " '[T]he right to smoke marijuana is not fundamental to the American scheme of justice, it is not necessary to ordered liberty, and it is not within a zone of privacy.' " *Seeley*, 132 Wn.2d at 792 (quoting *Smith*, 93 Wn.2d at 346-47).

(5) There is no constitutional protected interest in hav-

ing a physician prescribe an unapproved drug, regulated as a Schedule I controlled substance, for medical treatment. *See Seeley*, 132 Wn.2d at 794.

(6) A patient does not have a fundamental right to have marijuana prescribed as his preferred treatment over the legitimate objections of the State. *Seeley*, 132 Wn.2d at 794.

(7) Disagreements persist concerning the health effects of marijuana use and its effectiveness as a medicinal drug. *Seeley*, 132 Wn.2d at 805.

(8) Because the statute provides a mechanism whereby the Board of Pharmacy may take evidence to determine classification, the determination of reclassification is a matter for legislative or administrative, not judicial, judgment. *Seeley*, 132 Wn.2d at 805-06.

(9) The debate over the proper classification of marijuana belongs in the political arena. *Seeley*, 132 Wn.2d at 814.

■ With this legal backdrop in mind, we now turn to the defense of medical necessity. A defendant must prove, by a preponderance of evidence, the following elements of the affirmative defense of medical necessity: (1) he or she reasonably believed his use of marijuana was necessary to minimize the effects of a specific disease; (2) the benefits derived from its use are greater than the harm sought to be prevented by the controlled substances law; and (3) no drug is as effective in minimizing the effects of the disease. *State v. Cole*, 74 Wn. App. 571, 578, 874 P.2d 878 (citing *State v. Diana*, 24 Wn. App. 908, 916, 604 P.2d 1312 (1979)), *review denied*, 125 Wn.2d 1012 (1994). Corroborating medical evidence is required to support the defendant's assertions that he reasonably believed his actions were necessary to protect his health. *Diana*, 24 Wn. App. at 916. Further, in *Cole*, our colleagues stated that "[i]n reaching its decision of whether medical necessity exists, the trier of fact must balance the defendant's interest in preserving his health against the State's interest in regulating the drug involved." *Cole*, 74 Wn. App. at 578.

An assumption that is implicit in this defense is that

marijuana has currently accepted medical uses. This fact must be confirmed by medical evidence to support the defendant's assertion of reasonable belief. We hold that there would also have to be corroborating medical evidence that no other legal drugs were as effective in minimizing the effects of the disease. Although this element was not stated in the prior case law, it would make sense that this element be expressed only by an expert who knew the qualities of other drugs, not just the preference of the defendant.

■ ■ *Seeley* makes it clear that the decision of whether there is an accepted medical use for particular drugs has been vested in the Legislature by the Washington Constitution. The Legislature has determined that marijuana has no accepted medical use. Williams has no fundamental right to have marijuana as his preferred treatment over the State's objections. Further, if the debate over medical treatment belongs in the political arena, it makes no sense for the courts to fashion a defense whereby jurors weigh experts' testimony on the medical uses of a Schedule I drug. Otherwise, each trial would become a battlefield of experts. But the Legislature has designated the battlefield as the Board of Pharmacy. The Washington Constitution has not enabled each individual to be the final arbiter of the medicine he is entitled to take—it is the Legislature that has been authorized to make laws to regulate the sale of medicines and drugs.[1] *Seeley*, by implication, overrules both *Cole* and *Diana*. Thus, our holding is that with respect to Schedule I drugs, there is not a defense of medical necessity. Testimony of experts regarding the accepted medical use of marijuana is irrelevant and instructions to the jury would be improper.

■ Although our reasoning differs from that of the trial court, we can affirm the decision of the trial court upon

[1]We note that in November 1998 the people of Washington passed an initiative, No. 692, that would legalize the use of marijuana for medical purposes under certain conditions.

other valid grounds. *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986). We affirm.

## III. *Cole* Test

Because we recognize that this case creates a different rule than that expressed in *Cole* and *Diana* and that Williams may have relied on the rule previously expressed, we will also evaluate whether the medical necessity defense could have been asserted under the rule previously in effect.[2]

██ ██ Williams argues that the trial court improperly refused to give an instruction on medical necessity. Medical necessity is an affirmative defense and should not be considered by the jury unless the defendant has submitted substantial evidence to support it. *Cole*, 74 Wn. App. at 578; *State v. Niemczyk*, 31 Wn. App. 803, 807, 644 P.2d 759 (1982). Substantial evidence means evidence in " 'sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise.' " *In re Marriage of Vander Veen*, 62 Wn. App. 861, 865, 815 P.2d 843 (1991) (quoting *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 147, 381 P.2d 605, 96 A.L.R.2d 1193 (1963)). A challenge to the sufficiency of the defendant's evidence requires trial and appellate courts to interpret the evidence most favorably for the defendant. *Cole*, 74 Wn. App. at 579. In evaluating the adequacy of the evidence, the court cannot weigh the evidence; judgment as to the credibility of witnesses and the weight of evidence is the exclusive function of the jury. *Cole*, 74 Wn. App. at 579.

As we stated above, to be entitled to an instruction on medical necessity, the defendant must show that: (1) he or she reasonably believed his or her use of marijuana was necessary to minimize the effects of a specific disease; (2)

---

[2]We do not, however, address Williams's argument that the trial court improperly excluded Dr. Halpern's expert testimony under *Frye v. United States*, 293 F. 1013, 1014, 34 A.L.R. 145 (D.C. Cir. 1923). We will proceed with our analysis of the evidence including Dr. Halpern's testimony and because of our result, we need not reach the question of its admissibility.

the benefits derived from its use are greater than the harm sought to be prevented by the controlled substances law; and (3) no drug is as effective in minimizing the effects of the disease. *Cole*, 74 Wn. App. at 578 (citing *Diana*, 24 Wn. App. at 916). Corroborating medical evidence is required to support the defendant's assertions that he reasonably believed his actions were necessary to protect his health. *Diana*, 24 Wn. App. at 916. As we stated previously, we hold that implicit in the *Diana* test is that there also needs to be corroboration by expert testimony that no legal drug is as effective.

Williams has not shown that "no legal drug" would have been "as effective" in treating his anxiety. While Williams himself believed that none of the legal drugs offered to him were as effective,[3] both Dr. Penn and Dr. Hale testified that other legal drugs would have been effective to treat his emotional anxiety (Dr. Penn—Valium was effective; Dr. Hale—Clonipin and Deprocote were the best medicines for Williams "with a reasonable medical certainty"). Even taking the evidence in the light most favorable to the defendant, Williams failed to provide substantial evidence of medical necessity and therefore the trial court did not err in refusing to give the medical necessity instruction.[4]

Furthermore, because Williams failed to meet his evidentiary burden for the affirmative defense of medical necessity, which was the only relevance of Dr. Halpern's testimony, the trial court's error in excluding the expert testimony was not prejudicial and should not result in the reversal of the conviction.

Affirmed.

---

[3]Williams also argues that the other drugs he was prescribed were addictive and therefore unacceptable to him, while marijuana is not addictive. But even if believed, the addictive nature of the drugs does not bear on any of the three prerequisites for medical necessity and is therefore irrelevant here.

[4]Because of the conclusion that the medical necessity instruction was appropriately refused, we need not address the State's argument that Williams did not properly present this issue for appeal.

ARMSTRONG and HUNT, JJ., concur.

Reconsideration denied February 1, 1999.

Review denied at 138 Wn.2d 1002 (1999).