109 P.3d 493 (2005)
STATE of Washington, Respondent,
v.
Curtis Andrew BUTLER, Appellant.
No. 31365-1-II.
Court of Appeals of Washington, Division 2.
April 5, 2005.
Heiko Philipp Coppola, Attorney at Law, Cowlitz Co. Pros. Atty. Office, Kelso, WA, for Respondent.
Lisa Elizabeth Tabbut, Attorney at Law, Longview, WA, for Appellant.
HUNT, J.
¶ 1 Curtis Andrew Butler appeals convictions for manufacturing marijuana, possessing marijuana, and using drug paraphernalia. He argues that the trial court erred in (1) denying his request for public funds to hire a medical marijuana expert, and (2) rejecting his common law defense of medical necessity. Holding that RCW 69.51A.040 superseded the common law defense of medical necessity for marijuana use or possession and that Butler failed to meet the statutory requirements for this defense, we affirm.

*494 FACTS

I. MARIJUANA MANUFACTURE AND POSSESSION
¶ 2 Cowlitz County Sheriff's deputies checked on the welfare of Curtis Andrew Butler following a motor vehicle accident. Upon arriving at Butler's home, his wife gave the deputies permission to search for him.
¶ 3 During the search of the residence, Butler's wife initially stopped the deputies from entering one room. When she eventually opened the door, the deputies smelled an odor consistent with marijuana. She then gave them permission to search the room. Inside the room, the deputies located 49 growing marijuana plants, grow lights, fans, a timer for automatic light control, a scale, and what appeared to be processed marijuana.
¶ 4 Although the deputies did not find Butler at his residence that day, he later accepted full responsibility for the marijuana. He never presented any physician's documentation of a debilitating health condition for which he needed to possess and to use marijuana for medical purposes.

II. PROCEDURE
¶ 5 The State charged Butler with one count of manufacturing marijuana, one count of possessing less than 40 grams of marijuana, and one count of using drug paraphernalia. Butler gave notice of his intent to raise a defense of medical necessity.
¶ 6 Indigent, Butler brought an ex parte motion seeking court-authorized funds to hire Dr. Phillip Leveque, D.O., to support his medical necessity defense. The trial court conditionally granted this motion, subject to a ruling on Butler's pending motion in limine to establish a medical necessity defense.[1]
¶ 7 During the subsequent oral argument on Butler's motion in limine, it became apparent that Butler lacked valid documentation showing that he was a "qualifying patient" and that showing he had a medical need for marijuana, both of which are required to establish an affirmative defense of medical necessity under RCW 69.51A.040[2] of the Medical Use of Marijuana Act (Act).[3] Because Butler was unable to make prima facie showing of the statutory defense, even when the trial court directly questioned him, the court ruled that hiring an expert would waste state and county money, and it denied Butler's motion for expert witness fees.
¶ 8 Butler waived a jury and elected a bench trial. He stipulated that he was responsible for establishing the marijuana growing operation at his residence and that the processed marijuana belonged to him. He offered no evidence of his status as a qualifying patient and no valid documentation of his medical need for marijuana, as required by the Act. Based on this stipulation, the trial court found Butler guilty of all three marijuana counts, for which it imposed standard range sentences.
¶ 9 Butler appeals.

ANALYSIS
¶ 10 Butler argues that the trial court's denial of his request for expenditure of public funds to hire a medical marijuana expert (1) prevented him from raising a legitimate common law defense of medical necessity against the State's charges of unlawful manufacture and possession of marijuana and (2) compelled him to waive his right to a jury trial and to stipulate to facts.
*495 ¶ 11 His argument fails on both legal and factual grounds. Not only has the Act superseded the common law defense of medical necessity, but also, Butler failed even to attempt to meet the prerequisites of the statutory defense.

I. HISTORY OF MEDICAL NECESSITY DEFENSE

A. Common Law
¶ 12 In 1979, Division Three of our court first recognized a common law defense of medical necessity to a prosecution for manufacture, delivery, or possession of a controlled substance, specifically marijuana. State v. Diana, 24 Wash.App. 908, 916, 604 P.2d 1312 (1979). That court recognized existence of a medical necessity if:
(1) the defendant reasonably believed his use of marijuana was necessary to minimize the effects of [a specific disease]; (2) the benefits derived from its use are greater than the harm sought to be prevented by the controlled substances law; and (3) no drug is as effective in minimizing the effects of the disease.
Diana, 24 Wash.App. at 916, 604 P.2d 1312.
¶ 13 To establish this common law defense, the defendant had to present corroborating medical evidence to support his assertions that he reasonably believed that his marijuana-related actions were necessary to protect his health. Diana, 24 Wash.App. at 916, 604 P.2d 1312. Then, in deciding whether to allow such defense, the trial court had to balance the defendant's interest in preserving his health against the State's interest in regulating the drug involved. Diana, 24 Wash.App. at 916, 604 P.2d 1312.
¶ 14 We adopted Division Three's Diana reasoning in State v. Cole, 74 Wash.App. 571, 578, 874 P.2d 878, review denied, 125 Wash.2d 1012, 889 P.2d 499 (1994). Butler now argues on appeal that the trial court denied him the opportunity to establish this three-pronged Diana medical necessity defense.
¶ 15 In 1997, a few years after our adopting Diana in Cole, the Supreme Court held that the Legislature's classification of marijuana as a Schedule I drug did not violate the Washington Constitution.[4]Seeley v. State, 132 Wash.2d 776, 940 P.2d 604 (1997). Although our Supreme Court did not specifically decide whether a defendant could raise a medical necessity defense for marijuana use, the Court did provide helpful guidelines.
Washington's Constitution, article XX, section 2, specifically grants the Legislature the authority to regulate the practice of medicine and the sale of drugs and medicine. Seeley, 132 Wash.2d at 789, 940 P.2d 604.
....
Disagreements persist concerning the health effects of marijuana use and its effectiveness as a medicinal drug. Seeley, 132 Wash.2d at 805, 940 P.2d 604.
Because the [Uniform Controlled Substances Act] provides a mechanism whereby the Board of Pharmacy may take evidence to determine classification, the determination of reclassification is a matter for legislative or administrative, not judicial, judgment. Seeley, 132 Wash.2d at 805-06, 940 P.2d 604.

The debate over the proper classification of marijuana belongs in the political arena. Seeley, 132 Wash.2d at 814, 940 P.2d 604.
State v. Williams, 93 Wash.App. 340, 345-46, 968 P.2d 26 (1998), review denied, 138 Wash.2d 1002, 984 P.2d 1034 (1999) (emphasis added).
¶ 16 In 1998, we again addressed an asserted defense of medical necessity for marijuana use in light of Seeley. Williams, 93 Wash.App. at 345-46, 968 P.2d 26. This time, we held that, with respect to Schedule I drugs, a common law medical necessity defense did not exist: "Seeley makes it clear that the decision of whether there is an accepted medical use for particular drugs has been vested in the Legislature by the Washington Constitution." Williams, 93 Wash. *496 App. at 347, 968 P.2d 26 (emphasis added). At that time, our Legislature had determined that marijuana had no accepted medical use, and it had listed marijuana as a Schedule I drug; therefore, Washington law did not recognize a defense of medical necessity for marijuana use. Williams, 93 Wash.App. at 347, 968 P.2d 26.
¶ 17 As we further noted, "Seeley, by implication, overrule[d] both Cole and Diana." Williams, 93 Wash.App. at 347, 968 P.2d 26. Because the Supreme Court declined to review our Williams decision,[5] our Williams rationale, analysis, and holding remain good law. Thus, Washington does not recognize a common law defense of medical necessity for the use of marijuana.
¶ 18 Furthermore, Butler does not persuade us to reconsider our decision in Williams. Even were we so inclined, as we previously noted, "[I]f the debate over medical treatment belongs in the political arena, it makes no sense for the courts to fashion a defense whereby jurors weigh experts' testimony on the medical uses of a Schedule I drug." Williams, 93 Wash.App. at 347, 968 P.2d 26. Ultimately, it was the political arena that changed the law.

B. Political Action  Initiative and Statute
¶ 19 In November 1998, after much debate in the political arena, Washington voters passed Initiative 692. This initiative authorized patients with terminal or debilitating illnesses to use marijuana for medical purposes based on their treating physicians' professional medical judgment and discretion.
¶ 20 The Legislature codified this initiative in chapter 69.51A RCW, the Medical Use of Marijuana Act, thereby acknowledging that some patients with terminal or debilitating illnesses may benefit from the medical use of marijuana. This legislation created an affirmative defense available to qualifying patients and primary caregivers for otherwise criminal possession of marijuana, without requiring or allowing the trial to become a battlefield of experts:
If charged with a violation of state law relating to marijuana, any qualifying patient who is engaged in the medical use of marijuana, or any designated primary caregiver who assists a qualifying patient in the medical use of marijuana, will be deemed to have established an affirmative defense to such charges by proof of his or her compliance with the requirements provided in this chapter.
RCW 69.51A.040(1).
¶ 21 In order to establish this new statutory defense of medical necessity, a qualifying patient, 18 years of age or older, must:
(a) Meet all criteria for status as a qualifying patient;[[6]]
(b) Possess no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply; and
(c) Present his or her valid documentation to any law enforcement official who questions the patient regarding his or her medical use of marijuana.

*497 RCW 69.51A.040 (emphasis added). RCW 69.51A.010(5) expressly defines the required "valid documentation" as:
(a) A statement signed by a qualifying patient's physician, or a copy of the qualifying patient's pertinent medical records, which states that, in the physician's professional opinion, the potential benefits of the medical use of marijuana would likely outweigh the health risks for a particular qualifying patient.
(Emphasis added.) In order to qualify for this defense, a defendant/patient has to show by a preponderance of the evidence that he or she has met these statutory requirements. State v. Shepherd, 110 Wash.App. 544, 550, 41 P.3d 1235, review denied, 147 Wash.2d 1017, 56 P.3d 992 (2002) (citing State v. Riker, 123 Wash.2d 351, 368, 869 P.2d 43 (1994)).
¶ 22 The law is well settled that if a statute is inconsistent with the common law, we deem the statute to abrogate the common law. State v. Pub. Util. Dist. No.1 of Douglas County, 83 Wash.2d 219, 517 P.2d 585 (1973); Harmon v. Dep't of Soc. and Health Serv., 83 Wash.App. 596, 922 P.2d 201 (1996). Such is the case here. We hold, therefore, that the Medical Use of Marijuana Act affirmative defense superseded the common law medical necessity defense.

II. FAILURE TO OFFER QUALIFYING FACTS FOR STATUTORY MEDICAL NECESSITY DEFENSE
¶ 23 "The decision to grant or deny a motion for expert services lies within the sound discretion of the trial court."[7] We will reverse the trial court's decision on appeal only on a showing of clear abuse of discretion.[8] On the record before us, we note that Butler has failed to show a clear abuse of discretion. We also note that Butler has failed even to attempt to show by a preponderance of the evidence that he satisfied the medical necessity defense requirements of the Medical Use of Marijuana Act.[9]
¶ 24 First, he failed to offer proof tending to show that he had valid documentation of his medical need for marijuana;[10] hiring the expert he requested would not have cured this deficiency. In order to render his marijuana possession legal under the Act, he needed to obtain and to possess this required documentation from his personal physician in advance of law enforcement's questioning his medical use and possession.[11] RCW 69.51A.010(2)(c).
¶ 25 Moreover, Butler made no attempt, either at the pre-trial hearing or at the trial, to offer any documentation from his physician concerning his medical condition or his medical necessity for marijuana. In fact, when the trial court specifically asked at the pre-trial hearing whether Butler was representing that he had any documentation of medical necessity, Butler's counsel replied, "No. His defense is under a necessity." Report of Proceedings at 16.
¶ 26 Second, we note that, consistent with this representation, Butler never tried to show (1) what amount of marijuana constituted a 60-day supply for his condition or (2) that he had presented valid documentation to law enforcement when they arrested him for illegally possessing and manufacturing marijuana. See RCW 69.51A.040.
¶ 27 Therefore, Butler could not justify spending public funds for irrelevant, medical *498 expert testimony. Contrary to his argument on appeal, the trial court's refusal to spend public funds for Butler to hire a medical expert had no bearing on his failure to mount a successful defense of medical necessity under the Act.
¶ 28 We hold, therefore, that the trial court did not abuse its discretion in denying Butler's request for expenditure of public funds to hire an expert medical marijuana witness.
¶ 29 Affirmed.
We concur: QUINN-BRINTNALL, C.J., and VAN DEREN, J.
NOTES
[1] Butler supported his motion in limine with a declaration from Dr. Phillip Leveque, D.O., and a statement from Dr. Louis Cotterell, M.D., to establish his medical condition and the use of marijuana to treat it. Even though Dr. Leveque had consulted with Butler years earlier about using marijuana as an alternative treatment for pain, Butler did not offer Dr. Leveque's advice in the form necessary to satisfy RCW 69.51A.010.
[2] In order to raise the affirmative defense of medical necessity, a defendant/patient is required to show by a preponderance of the evidence that he or she has met the requirements of the Medical Use of Marijuana Act, chapter 69.51A RCW. State v. Phelps, 118 Wash.App. 740, 744, 77 P.3d 678 (2003). Without such documentation, a defendant/patient cannot prove the affirmative defense of medical necessity to a charge of marijuana possession.
[3] Chapter 69.51A RCW.
[4] The Uniform Controlled Substances Act classifies controlled substances based on their therapeutic value, potential for abuse, and safety. A substance is listed in Schedule I if there is: (1) has a high potential for abuse; (2) has no currently accepted medical use in treatment in the United States; and (3) lacks accepted safety for use in treatment under medical supervision. RCW 69.50.203.
[5] Williams, 138 Wash.2d 1002, 984 P.2d 1034.
[6] A "qualifying patient" is a person who:

(a) Is a patient of a [licensed] physician ...;
(b) Has been diagnosed by that physician as having a terminal or debilitating medical condition;
(c) Is a resident of the state of Washington at the time of such diagnosis;
(d) Has been advised by that physician about the risks and benefits of the medical use of marijuana; and
(e) Has been advised by that physician that they may benefit from the medical use of marijuana.
RCW 69.51A.010(3).
A "terminal or debilitating medical condition" includes:
(a) Cancer, human immunodeficiency virus (HIV), multiple sclerosis, epilepsy or other seizure disorder, or spasticity disorders; or
(b) Intractable pain, limited for the purpose of this chapter to mean pain unrelieved by standard medical treatments and medications; or
(c) Glaucoma, either acute or chronic, limited for the purpose of this chapter to mean increased intraocular pressure unrelieved by standard treatments and medications; or
(d) Any other medical condition duly approved by the Washington state medical quality assurance board [commission] as directed in this chapter.
RCW 69.51A.010(4) (emphasis added).
[7] State v. Adams, 77 Wash.App. 50, 54, 888 P.2d 1207, review denied, 126 Wash.2d 1016, 894 P.2d 565 (1995) (citing State v. Hermanson, 65 Wash.App. 450, 452, 829 P.2d 193, review denied, 120 Wash.2d 1016, 844 P.2d 436 (1992)).
[8] Adams, 77 Wash.App. at 54, 888 P.2d 1207.
[9] Insofar as Butler's motion in limine constituted an offer of proof, he failed to show by a preponderance of the evidence that he could satisfy the statutory requirements.
[10] Although Butler's counsel stated, "We believe that the Defendant qualifies under the initiative," he made no offer of proof tending to show that Butler could meet the statutory requirements. Report of Proceedings at 10.
[11] To hold otherwise would thwart the intent of our state constitution, under which the Legislature, not each individual citizen, has been authorized to make laws to regulate the sale and use of medicines and drugs. See Williams, 93 Wash.App. at 347, 968 P.2d 26.